# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

SHERRI L. RENNER,

      Plaintiff,

v.                        CASE NO.  4:17cv451-RH/CAS

THE SUPREME COURT OF FLORIDA
and THE FLORIDA BAR,

      Defendants.

_____/

## ORDER OF DISMISSAL

The plaintiff has a history of mental-health treatment. She became a conditional member of The Florida Bar but eventually stopped complying with her conditions and was disbarred. She asserts claims for damages against the Bar and the Florida Supreme Court. This order grants their motions to dismiss.

I

The plaintiff is Sherri L. Renner. The Florida Bar admitted her as member in 2005 but imposed conditions because of her history of mental-health treatment. Ms. Renner was required to consult at least monthly with a licensed mental-health provider, to have the provider submit quarterly reports to the Bar, to submit her

own quarterly statements to the Bar attesting to her compliance with the conditions, and to pay a quarterly monitoring fee.

Ms. Renner did not contest the conditions at that time. But she asked the Bar to remove the conditions in 2010, asserting, among other things, that the conditions were unnecessary and that continuing them would violate the Americans with Disabilities Act.

Under the Bar's standard practice, removal of the conditions could occur only if Ms. Renner paid for an examination by a Bar-approved mental-health provider and the provider gave a favorable opinion. That did not occur. The Bar did not respond to Ms. Renner's request for information on how she could challenge the conditions. She decided to stop complying with the conditions—her strategy for challenging the refusal to remove the conditions. At that point the Bar told her she could challenge its refusal to remove the conditions through a motion in the Florida Supreme Court, but she decided instead to continue with her strategy of noncompliance.

The Bar filed a disciplinary petition in the Florida Supreme Court. The Court disbarred Ms. Renner for willfully failing to comply with her conditions. Neither the Bar nor the Court provided Ms. Renner an opportunity to present evidence or to be heard in a meaningful manner on whether the conditions were in fact unnecessary.

Ms. Renner brought this action for damages against the Bar and the Court. She asserts claims under the ADA and the Rehabilitation Act of 1973. The substantive standards under the two statutes are the same in relevant respects, and for convenience, this order usually refers only to the ADA, not also to the Rehabilitation Act, except when discussing the Rehabilitation Act's separate jurisdictional requirements. *See Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases.").

The Bar and the Court have filed separate motions to dismiss the amended complaint on grounds that include failure to state a claim on which relief can be granted and Eleventh Amendment immunity. The motions have been fully briefed and are ripe for a decision.

## II

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of a motion to dismiss, the complaint's factual allegations, though not its legal conclusions, must be accepted as true. *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A motion to dismiss is not the vehicle by which the truth of a plaintiff's factual allegations should be judged. Instead, it remains true, after *Twombly* and *Iqbal* as before, that "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993).

A motion to dismiss for lack jurisdiction—this includes Eleventh Amendment immunity—can properly challenge the sufficiency of a complaint's jurisdictional *allegations* or the sufficiency of the *actual facts* to establish jurisdiction. *See, e.g.*, *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990). Here the motions assert Eleventh Amendment immunity primarily based on the amended complaint's *allegations*; to that extent the factual allegations must be accepted as true. The motions also rely on evidence to establish the facts relevant to Eleventh Amendment immunity from the Rehabilitation Act claims. To that extent the facts must be determined based on the evidence, with genuine disputes resolved in the plaintiff's favor.

III

The ADA prohibits a public entity from discriminating against a "qualified individual with a disability." 42 U.S.C. § 12132. A "disability" is "a physical or mental impairment that substantially limits one or more major life activities," or "a

record of such an impairment," or "being regarded as having such an impairment." *Id*. § 12102(1). An individual is "regarded as having such an impairment" if the individual "has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id*. § 12012(3)(A).

The amended complaint alleges that Ms. Renner has a history of mental-health treatment but gives no details. The amended complaint does not allege that Ms. Renner currently suffers an impairment that substantially limits a major life activity. Nor does it allege that she ever suffered such an impairment. But the amended complaint does allege that Ms. Renner suffered discrimination—she was subjected to burdensome conditions and eventually disbarred—because of a perceived mental impairment. This is a sufficient allegation that the ADA applies to Ms. Renner.

## IV

Neither side has identified the defendants' alleged violations with the precision necessary for proper analysis under the ADA and the Eleventh Amendment. At some points the two sides have talked past one another, not understanding the other side's position. When Ms. Renner's claims are properly understood and the wheat is separated from the chaff, there are four alleged ADA violations.

First, Ms. Renner asserts that by 2010, there was no need for the conditions—that continuing to require her to comply with the conditions violated the ADA. Second, Ms. Renner asserts that requiring her to pay for and obtain a favorable opinion from a Bar-approved mental-health professional violated the ADA. Third, Ms. Renner asserts that disbarring her without providing a meaningful opportunity to be heard on whether the conditions were still necessary violated the ADA. Fourth, Ms. Renner asserts she was disbarred in retaliation for asserting her rights under the ADA. This order addresses each of the four alleged violations in turn.

A

Attorneys take on important responsibilities to their clients, to the courts, and to our constitutional system. States are entitled to regulate attorneys, and all states do. As part of the regulation, states can properly concern themselves with mental health. Ms. Renner does not disagree. She has not asserted that it was improper for The Florida Bar to impose conditions when it admitted her in 2005.

The amended complaint alleges that by 2010 the conditions were no longer necessary. The amended complaint could perhaps be held deficient for failing to allege sufficient factual support for this assertion, but requiring a further amendment would serve no purpose. The Bar surely knows the details, and requiring them to be included in the amended complaint would compromise Ms.

Renner's interest in confidentiality while not affecting the outcome. For purposes of the motions to dismiss, this order accepts as true the allegation that by 2010 the conditions were no longer necessary. The allegation is not implausible; individuals sometimes recover from mental-health impairments, just as they sometimes recover from physical impairments. The defendants do not deny this.

The ADA prohibits the Bar from continuing to require a member with a disability to comply with unnecessary conditions just because, at an earlier point, the member's mental-health history made the conditions appropriate. Determining when conditions are still necessary is often, perhaps almost always, difficult, but the Bar cannot keep conditions in place permanently just because doing so is easier than determining whether the conditions are still necessary. The defendants do not deny this.

In sum, the Bar may or may not have violated the ADA by refusing to vacate Ms. Renner's conditions. But the issue cannot be resolved on the motions to dismiss. This order assumes without deciding that the conditions were no longer necessary and that the Bar violated the ADA by keeping the conditions in place.

This does not mean Ms. Renner may recover damages for this violation in this action. States have Eleventh Amendment immunity from ADA damages claims unless the conduct that violated the ADA also violated the Fourteenth Amendment or was congruent and proportional to concerns that animated adoption

of the ADA. *See, e.g.*, *Ass'n for Disabled Americans v. Fla. Int'l Univ.*, 405 F.3d 954, 956-57 (11th Cir. 2005). Failing to remove conditions that were properly imposed to address an attorney's history of mental-health treatment does not meet the prerequisites to abrogation of a state's Eleventh Amendment immunity. The Florida Bar and the Florida Supreme Court have Eleventh Amendment immunity from the damages claim based on this violation.

## B

Similarly, requiring Ms. Renner to pay for and obtain a favorable opinion from a Bar-approved mental-health provider may have violated the ADA. *See Hobbs v. Fla. Bd. of Bar Exam'rs*, No. 4:17cv422-RH-CAS (N.D. Fla. Feb. 25, 2019). This order assumes without deciding that this *did* violate the ADA.

Again, though, the defendants have Eleventh Amendment immunity, because even if this was a violation of the ADA, it was only a statutory, not a Fourteenth Amendment, violation. Without the ADA, any claim that a state bar cannot rely on its own mental-health provider would fall flat. So would any claim that a state bar cannot require an attorney to pay the provider's fee. And Ms. Renner has not met the congruence-and-proportionality standard for this violation.

This result is not changed by the fact that Ms. Renner was not afforded a hearing on the question whether the conditions were still necessary.

To be sure, under the Fourteenth Amendment, a state must not deprive a person of "life, liberty, or property, without due process of law." Ms. Renner had a protected liberty or property interest in her bar membership. This order assumes without deciding that she also had a liberty or property interest in the removal of unnecessary conditions. This means she was entitled to due process. But the process that was due was not the process she wanted.

The contours of the process that is due in a given context turn on factors identified in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), and *J.R. v. Hansen*, 736 F.3d 959, 966 (11th Cir. 2013). Due process often requires an opportunity to contest the facts that are critical to a decision. This often means there is a right to a hearing. But due process does *not* require a hearing on the law—on governing standards of general applicability.

*Mathews* provides an illustration. Under the Social Security Act, disability benefits are available to workers medically unable to engage in substantial gainful activity. The issue in *Mathews* was whether, prior to termination of the plaintiff's benefits, he was entitled to a hearing on whether he was unable to engage in substantial gainful activity. Nobody suggested the plaintiff was entitled to a hearing on the governing standard—on whether benefits should be available only to workers who were medically unable to engage in substantial gainful activity.

The standard was already in place; the proposed hearing would address only the proper application of the standard to the plaintiff.

More generally, a person facing a deprivation of a liberty or property interest is ordinarily entitled to due process on the proper application of a governing standard to the person's own individual circumstances. This often means a hearing to determine the relevant facts—the facts relevant to the proper application of the governing standard. But a person is not entitled to a hearing on the governing standard itself—on the standard that applies not only to the person but also to all others who are similarly situated. This tracks the manner in which courts and legislatures operate. A court must give an affected individual notice and an opportunity to be heard because the court will apply the governing standard to that individual. A legislature, in contrast, enacts laws of general applicability and need not give an affected individual notice and an opportunity to be heard. The application of these principles to an administrative agency turns on its role on a specific matter—whether the agency is establishing general standards or applying them in individual cases.

The upshot for Ms. Renner is this. She had no right to a hearing on the Bar's governing standard—on the uniformly followed requirement for a favorable opinion from a Bar-approved mental-health provider prior to removal of conditions imposed on a person with a history of mental-health treatment. The governing

standard may have violated the ADA, but Ms. Renner had no constitutional right to a hearing on whether that should or should not be the governing standard.

Had there been a genuine dispute about the facts relevant to application of the governing standard—about whether Ms. Renner had in fact obtained a favorable opinion from a Bar-approved provider—Ms. Renner would have been entitled to an appropriate hearing. But there was no dispute about this. Ms. Renner did not obtain the required favorable opinion. She admitted it at the relevant time and admits it now. A hearing to determine whether she met the Bar's general standard—whether she obtained a favorable opinion from a Bar-approved mental-health provider—would have served no purpose.

This analysis does not overlook Ms. Renner's complaint that she was not told what protocols the Bar-approved mental-health provider would follow or how the provider would decide whether the conditions were still necessary. A hypothetical helps explain the point. Suppose the Florida Bar issued board certifications for construction litigation under which, to be certified, an attorney had to obtain a favorable verdict in a construction case. And suppose this somehow was a property right, so that due process was required. An applicant would have a right to a hearing (or other appropriate due process) on any dispute over whether the attorney had obtained a qualifying favorable verdict. But if the attorney had suffered an unfavorable verdict in the attorney's only construction case, the

attorney would not have a right, as part of the application for board certification, to a hearing on what the jury actually considered or why it returned the verdict it returned.

Same here. The standard is that to remove the conditions, the Bar member must pay for and obtain a favorable opinion from a Bar-approved mental-health provider. The member is not entitled to a hearing on what the provider considered or why the provider rendered an adverse opinion.

The result is no different if the requirement for a favorable opinion is viewed not as the governing general standard but as part of the Bar's procedure for applying a general standard of fitness to practice without conditions. On that view, the Bar-approved mental-health professional is in effect the first-level hearing officer, obligated to provide Ms. Renner notice and an opportunity to be heard. She has shown no due-process violation, even on this view, because she was afforded an opportunity to be heard by the mental-health provider, and no restrictions were placed on her ability to provide information. The Bar was not constitutionally obligated to specify in greater detail the factors the mental-health provider could consider in forming an opinion.

In sum, the Bar's general standard—the requirement to pay for and obtain a favorable opinion from a Bar-approved mental-health provider—may have

violated the ADA, but the defendants have Eleventh Amendment immunity from the damages claim based on any such violation.

C

The Florida Supreme Court disbarred Ms. Renner for willfully failing to comply with her conditions. If, as this order assumes, keeping the conditions in place violated the ADA, then disbarring Ms. Renner for failing to comply with the conditions also violated the ADA. But this was again only a statutory, not a Fourteenth Amendment, violation.

To be sure, Ms. Renner had a Fourteenth Amendment right to procedural due process. Had she denied that she violated her conditions, she would have been entitled to a hearing on that issue. But she admitted it. Had she denied that her violation was a conscious choice, she would have been entitled to a hearing on that issue. But again she admitted it. Violating the conditions was what Ms. Renner decided to do. The Florida Supreme Court issued a show-cause order and afforded Ms. Renner an opportunity to be heard in writing on whether she should be disbarred for choosing this course. Due process required nothing more.

Ms. Renner says, though, that she had to violate the conditions because there was no other way to challenge the Bar's refusal to vacate them—no other way to remedy the Bar's ongoing violation of the ADA. That is not so.

First, she could have sought relief in the Florida Supreme Court. A court almost always has inherent authority to modify an injunction or similar order with continuing effect that was entered by the court itself. Ms. Renner's conditions were in effect based on the Florida Supreme Court's own 2005 order approving the conditions. Ms. Renner notes that the conditions explicitly authorized the Bar, not Ms. Renner, to file a motion to remove the conditions. But Ms. Renner has pointed to nothing calling into question the Court's inherent authority to modify its own prior order, including on either side's motion. Before the disciplinary petition was filed, the Bar told Ms. Renner she could file in the Supreme Court—and the Bar would oppose on the merits—a motion to terminate the conditions. This made clear the Bar would not assert that such a motion was procedurally improper. And in any event, the Florida Supreme Court had authority to issue "all writs necessary to the complete exercise of its jurisdiction," including on a matter like this relating to Bar membership. *See* Fla. Const. art. V § 3(b)(7).

Second, regardless of whether a remedy was available in the Florida Supreme Court, Ms. Renner could have filed a complaint in this court against an appropriate state official—perhaps the Bar's executive director—alleging the same ADA violation she now alleges in this action. The Eleventh Amendment would not have barred such an action. *See Ex parte Young*, 209 U.S. 123 (1908).

Ms. Renner did not have a constitutional right to violate the conditions without seeking available judicial review.

D

Finally, Ms. Renner says she was disbarred in retaliation for asserting her rights under the ADA. She is correct that the ADA includes an antiretaliation provision. *See* 42 U.S.C. § 12203. Any disbarment based on retaliation probably would violate the Fourteenth Amendment, which makes the First Amendment applicable to the states. Ms. Renner's retaliation claim thus is not barred by Eleventh Amendment immunity.

But the retaliation claim fails on the merits. The amended complaint shows on its face a nonretaliatory basis for the defendants' actions. The Bar kept Ms. Renner's conditions in place based on its standard practice of removing conditions only based on a favorable opinion from a Bar-approved mental-health provider. The Supreme Court disbarred Ms. Renner because she willfully violated her conditions. The Bar and the Court would take these same actions against any conditionally admitted Bar member who engaged in the same conduct, regardless of whether the member asserted any right under the ADA. The amended complaint does not allege facts plausibly suggesting the contrary.

IV

Ms. Renner seeks relief not only under the ADA but also under the
Rehabilitation Act. The substantive standards under the two acts are the same. But
there is an important difference in a state's ability to assert Eleventh Amendment
in response to claims under the acts.

The Rehabilitation Act applies to a "program or activity" receiving federal
funds. 29 U.S.C. § 794(a). As relevant here, a "program or activity" means "all of
the operations" of a state or local government "department, agency, special
purpose district, or other instrumentality." *Id*. § 794(b)(1)(A).

A state waives its Eleventh Amendment immunity from a Rehabilitation Act
claim by accepting federal funds, knowing that an unambiguous condition for
accepting the funds is the waiver of Eleventh Amendment immunity. *See Garrett
v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288 (11th Cir. 2003). The
waiver is coextensive with the Act. As relevant here, the waiver extends only to
claims based on conduct of the department that receives federal funds.

The record establishes that neither the Florida Supreme Court nor the Florida
Bar receives federal funds. The Court and the Bar are not part of a "department,
agency, special purpose district, or other instrumentality" that receives federal
funds. The Rehabilitation Act thus does not apply to programs and activities of the
Court or the Bar. This order thus dismisses the Rehabilitation Act claims.

V

For these reasons,

IT IS ORDERED:

1. The motions to dismiss, ECF Nos. 45 and 48, are granted.

2. The claim for violating the Americans with Disabilities Act is dismissed

without prejudice based on Eleventh Amendment immunity to the extent the claim

is based on (a) the requirement for the plaintiff to pay for and obtain a favorable

evaluation from a Bar-approved mental-health provider as a prerequisite to

removal of the conditions on the plaintiff's Bar membership or (b) the failure to

remove the conditions on the plaintiff's Bar membership or (c) the plaintiff's

disbarment.

3. The claim for violating the Americans with Disabilities Act is dismissed

with prejudice, on the merits, to the extent the claim is based on (a) the failure to

provide due process or (b) retaliation.

4. The Rehabilitation Act claim is dismissed with prejudice on the ground

that the Act does not apply to the program or activity at issue.

5. The clerk must enter judgment and close the file.

SO ORDERED on November 1, 2019.

s/Robert L. Hinkle_____
United States District Judge